May it please the Court, Gail Podolsky from the law firm of Carleton Fields, representing Defendant Appellant Dewberry Capital Corporation. Dewberry Capital is here today to ask the Court to reverse the District Court Summary Judgment Order and remand this case back to Judge Tranga, who is the newly assigned District Court Judge to this case. The District Court Summary Judgment Order failed to apply the correct summary judgment standards. The Judge's opinion improperly weighed the evidence, made credibility determinations, failed to view the evidence in the light most favorable to the non-party, and failed to consider evidence that directly contradicted the Court's key conclusions, including the party's agreement to coexist in the marketplace. The District Court also completely ignored the fundamental element in trademark infringement cases' priority of use. The summary judgment record and briefing demonstrated significant issues of fact, including the hotly contested issue of likelihood of confusion. These errors initially resulted in the District Court finding Dewberry Capital liable for trademark infringement and breach of contract as a matter of law. The errors were further compounded in the damages trial and the disgorgement award, the scope of the injunction, and the District Court's finding of an exceptional case and willfulness. Didn't Appellant itself say that there was likely to be confusion in the in its counterclaim in the prior litigation which resulted in the confidential settlement agreement? The parties did dispute trademark infringement back prior to the coexistence agreement, but there were disputed issues of fact at that time. What were the relevant services? But causing confusion was not one of them. In the Appellant's case, did it also resemble Appellant's Dewberry Capital marks as to likely cause confusion? Yes, Your Honor. The counterclaims were ultimately dismissed by the trial court, but I think that, at least in this current case... I'm talking about the 2006 litigation. Yeah, the prior litigation. Way back even before this litigation started, Appellant agreed that there was or claimed that there was likely to be confusion in its counterclaim, and it wasn't dismissed. That was settled based on the confidential settlement agreement, which you call the coexistence agreement. Yes, Your Honor. I mean, the substance of the agreement is from trademark purposes a coexistence agreement. Yes, the parties disputed the trademark infringement and likelihood of confusion. After the record was developed, they settled. You keep saying the Appellant did not dispute it. Appellant is the one that wrote that there's likely to be confusion in its counterclaim in 2006. And that was with respect to Dewberry Capital versus Dewberry Engineers, and this case is concerning different marks, and there also the fact that, you know, again, the record came forward, and I think the evidence, based on the current record, shows that there are disputed facts on likelihood of confusion. So, turning to the trademark infringement claim, we have, again, priority of use. So, priority of use was completely ignored by the district court, and this alone warrants reversal. Priority of use is a threshold element of any trademark infringement claim, and the district court failed to consider this at summary judgment and in entering the injunction. Prior use and scope of use is a question of fact, and the facts are is that Dewberry Capital first used its mark in 1989. Dewberry Engineers' trademark registrations claim a first use date of 2003. Those facts alone warrant reversal, especially when you're drawing all reasonable inferences in the non-movement's favor. We turn to likelihood of confusion. As this court knows, likelihood of confusion is a well-established to be a question of fact and inappropriate for summary judgment. It's nine factors, but today, due to time, we'll focus on a few. First, turning to the strength and distinctiveness of plaintiff's mark. In the summary judgment order, the district court acknowledges that Dewberry is both a fruit as well as a surname, but without any citations to the case, it summarily concludes that plaintiff's trademark does not suggest a surname and that the marks were arbitrary and conceptually strong. But in reaching this conclusion, the district court again failed to construe all reasonable inferences in the non-movement's favor. Surnames are never assumed to be distinctive. There are also numerous third-party uses of Dewberry and marks that end in 1742 through 1757. We also have the fact that the plaintiff consented to defendant's uses of Dewberry, including one that had the Dewberry fruit in Dewberry Isle. These were consented to by the parties. We also have the fact that over 4,000 people have the last name Dewberry. Dewberry engineers outside of this litigation, there is not evidence presented that they police their marks. In fact, there's contrary evidence that they failed to police the marks. Dewberry engineers operate in limited markets, and the district court failed to consider this evidence, simply looked at the trademark registration, and ended the analysis there. If we look at the similarity of the marks, I think that the response brief that was filed really shows the difference of the party's marks. If you just look at the marks as a whole, so one you have a fruit, on the other you have a stylized D. The fonts are different, the typeface is different, even Dewberry in the marks are different. Our client uses all caps, they do not, and then the design marks are the dominant feature in our client's mark. The stylized D is double the size of the Dewberry fruit, and then you tack on the fact that we use more than just Dewberry. With all reasonable inferences in my client's favor, there are visual differences that precluded the court from finding similarity of the marks. But you don't stop the analysis there, you look at the marks' meanings. Well, the district court claims that Dewberry on the plaintiff's side is a fruit, and our Dewberry is a surname, so they have different connotations, but district court didn't look at that. All of this leads to different commercial impressions, but you can't forget about the coexistence agreement. The parties divided divided it up. We got to use Dewberry Capital, they got to use Dewberry. So, substituting one generic term, Dewberry Capital, for Dewberry Group, doesn't change the overall commercial impression of the mark. Let me interrupt you, you've been talking up until now about facts outside, I guess, of the settlement agreement. I'm just trying to get square in my head the extent to which we can use a settlement agreement. I mean, I guess we can use, I guess there's this evidence that's introduced. I'm just trying to think how that necessarily cuts in favor of your argument. So, yes, the document is called a settlement agreement, but the actual terms of it is a coexistence agreement. It defines when and how the parties can use their respective marks. So, that's a clear trademark world, how we deal with issues when there are, you know, marks that people disagree on. And so, we carved, the parties carved up things, and the agreement says that my client may use Dewberry Capital in connection with real estate development services. Uses the word may, not shall, may. And then it also said that our client, they were not going to object to our client's use of multiple different variant Dewberry marks. Dewberry Sessinger Holdings, Dewberry Isle, and several others. And so, yes, again, it's a title of the settlement agreement, but in reality, it's a coexistence agreement. Does that matter? I mean, if we think, I mean, does it matter if it's a settlement agreement versus, you know, some, I mean, I guess, I mean, there was a, there was a lawsuit. I mean, anyway, I don't want to split hairs on, I can't imagine the, whether we call it a settlement agreement versus a coexistence agreement is the issue, is it? No, no, your honor, it's not the issue. But it is an important factor that the district court ignored in its summary judgment order, except when it came to the intent prong. When it came to the intent prong, the judge was all over the coexistence agreement. You know, you knew about Dewberry engineers marks, you signed this coexistence agreement. But the fact that my client knew about them is not the end all be all on the intent prong. And the coexistence agreement is, from our perspective, at summary judgment, construing all reasonable inferences in my an admission from them, that there is no confusion when using Dewberry capital, that the parties marks are different, that the services are different, and that, you know, there's not going to be confusion. And there's even a provision in the agreement that talks about when confusion occurs, that we got it, that the parties have to notify each other, but they weren't notified of confusion. The instances of actual. What about all those cease and desist letters? Well, the cease and desist letters weren't based on actual confusion. They were based on the objection to the new branding. And so, yes, they filed a cease and desist letter. We responded. Letters, three of them. Yes, Your Honor. There was an exchange of letters. Then we battled it out a little bit before the USPTO. And two of the marks that my client filed at the USPTO were actually granted in the sense of the substance of examination was permitted. And the trademark office said these are entitled to registration. But then the other side filed letters of protest. They yanked those back. And there was never a final determination on whether the marks were confusingly similar. And so, in terms of the cease and desist letters, you know, my client has every right to argue that it's non-infringing. The settlement agreement didn't prohibit it from doing that, didn't prohibit them from changing one generic term to another. And, you know, based on the factual records and the inferences that have to be drawn in my client's favor, there weren't facts to support summary judgment on trademark infringement. So, Counselor, what if, hypothetically, what if I agree with you or we agree with you that there may have been a question of fact on What do we do with that situation? So, in that situation, the damages award has to go away because the damages award is solely based on disgorgement. And disgorgement is not available in breach of contract cases. And even if the court were to find liability on breach of contract, which we obviously dispute at the summary judgment level, there's still no damages. They never established any damages. The only theory... The district court said they were damaged. It didn't make a damages finding on the breach of contract case. Would we not be required to send it back to the district court to assess damages for breach of contract? I don't believe so, Your Honor, because we did have a damages trial. And they unilaterally chose just to go up on trademark damages. They made that decision. They could have tried to proffer breach of contract damages. So, your position is there's no... The district court awarded liability under breach of contract and trademark. On the damages trial, the only evidence presented was related to the trademark violation? Yes, Your Honor. That's our position. And sticking with the breach of contract, you know, again, we were at summary judgment when this was decided. And we previously spoke about the provision of the may versus shall. And our position is, you know, under the law, my client was not prohibited under the agreement to change its name. And so, that was an error to find that that was a breach. And as far as the other breaches, there still are disputed issues of material fact for those as well. You know, the district court completely ignored our experts' opinion that these were not breaches. The district court weighed the evidence. Weighed the evidence all in Dewberry's favor. Made credibility determinations when they shouldn't have. And that resulted in a massive windfall at the damages trial. You know, what we are asking for in this case is that the summary judgment order be reversed and the case be completely remanded as a whole. There should not have been liability. And there certainly shouldn't have been the substantial damages award when she had attorney's fees and costs was almost $48 million when there were no lost sales, no lost customers, no reputational harm, and my client didn't make any money. So, to have $48 million tagged to my client when there were no profits to speak of for my client and no harm is unjust and also a complete windfall and violates the standard principles of the Lanham Act. Just a brief conclusion again, you know, we are asking the court to remand, reverse the summary judgment orders, and allow this case to proceed to trial. And I will reserve my time. Thank you. Mr. Linn. Good morning, Chief Judge Gregory. May it please the court. Albert Linn on behalf of Dewberry Engineers. Dewberry Group would have this court believe that the district court below got nearly everything in this case wrong. But as the district court said, in reducing my client's requested attorney fees, and I quote, this case was relatively straightforward. It did not present novel legal questions or complex factual issues. If I may, I'd like to start with the breach of the settlement agreement because that's, the settlement agreement is where this entire saga began. The district court correctly concluded on summary judgment that the of the confidential settlement agreement, B2 and B3 together, which govern the use of Dewberry Capital with respect to real estate development services. B6, which bars the use of Dewberry Capital with respect to architectural and engineering services. And B10, which required the continued use of the column symbol, quote, where feasible. Dewberry Group has argued here, she does not contest any of the evidence that formed the basis of the district court's opinion. She raises this notion of she invokes the phrase question of facts repeatedly as if it has some talismanic significance. But as this court knows, questions of fact can be resolved at the summary judgment stage if, when you look at the record as a whole, especially the uncontroverted evidence, no reasonable jury could rule in favor of the non-movement. There are- Counsel, I want to let you finish on liability. I'm kind of jumping ahead. I want you to assume I agree with you on the contract case. There's no reasonable, no genuine issue of material fact. Did the district court do anything on damages? It said you had incurred damages, but did it issue a damages award on the breach of contract case? It did not, your honor. It issued the injunction, which I based on both contract liability- I think the injunction, if I recall, I think there can be an issue about whether you can get the injunction as a breach of contract. If I remember the order, it was relying on the trademark violation for the injunction. You know the record better than me. I thought, I'm fairly certain it would rely on both. Okay, I thought it was the other. I'll double check. But as to your question on the damages, we agreed with the other side that the damages were based on 1117A of the Lanham Act that was scored for the profit. So, what if- I'm asking your colleague this same question. What if I agree with you, no genuine issue of material fact on contract, but I think there is one on the trademark violation? What do we do there with the contract claim? Your honor, I think you affirm the liability on the contract claim. I think you can- this gets to the question we talked about on the record on the injunction. I think you can maintain the injunction. The terms of the injunction track many of the terms of the confidential settlement agreement. And then I do think the disgorgement of profits goes away because that was awarded as a result of the trademark infringement. But as I'll get to you, and I can turn it to you now if you would like. I'll just speak to whatever report you want. I just wanted to ask you that question. I have a question about the disgorgement of profits. And you're saying that goes only to the trademark infringement, correct? Not the breach of contract. Is there a causation requirement before damages for disgorgement of profits is entered? There is not, your honor. And that's because of the way the statute is worded. And this court has recognized it as have many others. So there's two parts to 1117A. You can get damages, literally the word damages, which is actual damages, or you can be awarded profits. And we were awarded the disgorgement of profits under the profits piece of this. This court's decision in Georgia Pacific identifies the two different avenues for disgorgement under 1117A. But the profits piece of it has a very specific sort of burden shifting approach to it. We as the plaintiff need to show their profits. They then carry the burden of showing, your honor, this gets to your causation question, which costs are not attributable to the infringing marks. And that then gets deducted from what we showed as profits. There's a further piece of it, which is where we think the bulk of this comes from. And it goes on to say, the courts, it says, if the court shall find that the amount of the recovery based on profits, so once he's calculated the profits, is either inadequate or excessive, the court may, in its discretion, enter judgments for such sum as the court shall find to be just. But before the kind of mechanical approach that you outlined for 1117, here's the phrase to equitable principles. And so that applies to the profit analysis, it seems to me, reading the text of the statute. We then have our, I think, synergistic case that lists some factors, and certainly at least a factor is whether they've been any diverted savings. I'm not sure we've ever adopted what the IP world calls the traditional test or the modern test or those things that are talked about in general. I was trying to figure that out a little bit myself. But to Judge Thacker's question, I think the presence or absence of actual damages is certainly relevant, at least under the synergistic case. Would you agree with that? It's a factor in there. Are there any diverted sales? Yes, it is a factor in there. And just to back up for a second, I mean, I think there's two pieces to the disgorgement analysis. The synergistic factors are this court's way of kind of organizing the assessment of whether a disgorgement is permissible at all. There's the separate question of once you determine whether the disgorgement is permissible, how much can be awarded? And I think that gets into the profit calculation and then the awarding of the additional sum as the district court determines in its discretion it's just. And when you apply the synergistic factors, you can talk about that now. I mean, this court has never said that all of the factors are required. In fact, in synergistic itself, it noted that the factor of willful infringement didn't have to be satisfied. And so we think that at least four of them are satisfied here. Intent, and these are all findings based on findings of fact of the district. I think it's important to remember that the disgorgement of profits piece of this followed a three-day trial with multiple witnesses and a lot of documentary evidence. So there's the district court made a finding of intent, made a finding that the injunction was not a sufficient remedy, made a finding that there was no unreasonable delay, and made a finding that public interest was served by the deterrent effect here because, again, we had a confidential settlement agreement that they didn't abide by and blew right through. True, but it says whether sales have been diverted and then it makes this finding that the court has already established that the parties operate in that seems at least debatable. But I'll be glad to talk to you about that. Y'all do different stuff. But even assuming that, then it goes on to say because they're in overlap at markets, that shows there have been diverted sales without identifying any diverted sales. So it's like, okay, they're in overlap at markets, putting aside the fact that y'all are third-party engineering services and they're real estate developers. It just assumes they're diverted sales without identifying one. So, Your Honor, there's a lot in that question. If I could reserve this sort of services question because I have an answer for you on that as well. Okay. On the diverted sales, so this really gets to, I think, what are the synergistic factors doing under that prong? And so I think what synergistic says is whether the plaintiff lost sales as a result of the lost sales and the extent to which the plaintiff had entered the market area where the infringement occurred. I think his finding about the overlapping markets goes to that second piece of it. And if I could just put a pin in that and come back to it, because I want to answer your question on diverted sales. I think, Your Honor, to the extent synergistic suggests that diverted sales must be shown, right, that there has to be a causation element, this gets to Judge Thacker's question, that is inconsistent with the statute. This court in Explain Marketing, this court in Shell Oil, and multiple other circuits, there's no split on this question, agree that under 1117A you can get either actual damages or profits. And the profits analysis does not require the plaintiff to show causation. That burden falls to the defendant. So, is it relevant to the synergistic factors? Yeah, synergistic seems to say it is relevant, but I don't think you can say that there have to be actual damages or a straight line to lost sales, because that would not be consistent with the statute or this court's case law. So, soon, yeah, we have kind of the same situation. At the same time, Dewberry Group infringes. Mr. Dewberry from Dewberry Group has a client that's a long-lost uncle who wants to develop a bunch of real estate. And all of a sudden they make 50 more million dollars because the guy's family starts using them for real estate development. At the same time, they are violating the trademark. But, you know, looking at that, the additional revenue has zero to do with the violation of the trademark. Your position there is you get that profit, right? Our position is that the burden then shifts to the defendant to show that there is no causal link. That's what the statute says. It says that, I want to make sure I find it, in assessing profits, the plaintiff shall be required to prove defendant sales only. Defendant must prove all elements of cost or deduction claim. And the case law spells out what that means. And that means that the burden of showing that there is no causation link between the infringing marks and the sales falls to the defendant. Which case law is that? The exclaimed marketing case talks about that. There are ones from, I can point you to some from other circuits as well. Exclaimed marketing is this court. That's fine. This court's all I need. And it did counsel on that point. It did, I think, I may be wrong, but I think Dewberry Group, I'm calling it Dewberry Group versus Dewberry Engineering just to keep it straight in my head. Did Dewberry Group, and I'll ask your colleague this on her remaining time, introduce evidence that the profits, I know they challenged the third party corporate issue, putting that aside for the second. Did they produce evidence that the profits obtained were not related or causally connected to the violation of the mark? The short answer is no. They made the categorical assertion that all of these revenues should be out. And this is at her report at JA 4457. Therefore, I am not calculating defendant's profits at this time. And the district court noted that in the trial on damages, she was asked about whether she had done this sort of itemized deduction. And the expert Miller admitted that she hadn't. The district court relied on that. We pointed it out in our opposition brief, and my friend in the reply didn't contest that. Can I shift to another damage? You got something you wanted to say? I didn't want to get to the services and the market question. Just very quickly to respectfully disagree with sort of your perception of the evidence here. I think the uncontroverted evidence shows that they are a subset of our universe. There's a sealed declaration, the Maxwell Declaration, which I won't read out loud in public. But your honor, if you look at that declaration, it explains what we do, which is everything related to the built environment. And so real estate development services are a piece of what we do. The Legerata Declaration also talks at length about Dewberry Real Estate Services, which uses the marks at issue here to do real estate development services. So we do architecture, we do civil engineering, we also do real estate development services, and we're in the same market. The uncontroverted evidence shows that we are in all 50 states. You said there, I mean, that's fair. And if I overstated it, I appreciate your response. But and it seems like, you know, there's some, it's not like y'all line up one to one. You know, I don't want to, you know, get too much in the weeds. My question is maybe not whether you're absolutely not in the same market, but whether there's a question of fact as to whether you're in the same market. I don't think so. And your honor, I know you had another question of damages, but this gets the likelihood of confusion. And I think, one, on similarity of services, which is the factor that we're discussing here, I think as we've discussed, I think there's uncontroverted evidence that we do the same thing. They say there are questions of fact. That's the phrase that she uses. But there is, she does not point to, you can look at the sites that she points to in her reply brief. None of them contest our evidence that we perform real estate development services. But the other point, your honor, on similarity of services is that the case law doesn't require either identical services or even direct competition. And that's from this court's case law. What it says is that you can have sort of similar services, but also complementary products or services, right, are particularly vulnerable. That's the ComSec case. And that's, the interesting thing, I mean, I think that's fair. You know, we have this, you know, we got, I think, I can't remember how many factors, I think 10 factors. Nine, your honor. And, you know, the general law is those are questions of fact. And we got a recent Variety Stores case involving these same issues that makes that point pretty emphatically. And so you got A, you know, are there questions of fact related to each of the nine factors? And then you got B, how do you apply all those factors? And the district court said that there's no genuine issues of material fact. But anyway, I'm not, I know your position on it. That just seems like a lot of weighing, even of the factors, even if you assume you're right on all the factors. True, true enough, your honor. But this court has also affirmed summary judgment, unlikely of confusion, a number of times, including the RxD case just two years ago. It also did it in the Lone Star case, which I think is particularly notable because there, this court concluded that the district court hadn't even gone through the pizzeria factors, then declined to remand and said, we can look at the record and conclude on summary, judgment record that no reasonable jury could not find likelihood of confusion. And just to, again, I don't want to lose your other damages question, but on likelihood of confusion, there is similarity of services, which we think we have identical and in direct competition, but I think even complementary services and no one, I think it's very difficult to dispute that they are complementary services in the same sense that was described in Comset. But the other factors are the ones that this court has described as paramount and important. Actual confusion, for example. We have a survey, uncontroverted. They didn't put in contrary survey evidence. They tried to get it struck under Daubert. That failed. They haven't appealed that ruling. So the survey stands alone as the only survey evidence. It found 20% confusion rate. This court in the RxD case quoted the Rosetta Stone case saying that 17% in a survey is, quote, clear evidence for purposes of summary judgment, Your Honor, to get to your point, that that's so overwhelming that no reasonable jury could go the other way on actual confusion. On intent, Your Honor, there are, the district court described multiple red flags. I think he described them. I would call them stop signs that they just blew through. Three cease and desist letters, the original confidential settlement agreement, the PTO's multiple rejections. But for me, Your Honor, I think the one that's the most compelling is the fact that when they decided to rebrand, John Dubre, the owner of Dubre Group, didn't even tell his general counsel about, much less the existence of the confidential settlement agreement, even the fact of the prior litigation. That's undisputed in the record. At JA, I think it's 3826, there's a letter from John Gross, the general counsel, apologizing to my client, saying that he didn't even know about the prior litigation until we had mentioned it to him. So you've got actual confusion, you've got intent, similarity of the marks. Your Honor, I think my friend misunderstands the case law. If you look at the Pizzeria Uno case, it says, you just look at whether the marks look the same. In Pizzeria Uno, this court found Pizzeria Uno and Taco Uno to be similar marks because of the use of the word Uno. If those two are similar marks, surely Dubre, which is our mark for the Berry, and Dubre Group are similar marks for purposes of that factor at the summary judgment stage. I think when you put these factors together, you find, Your Honor, it's like the RxD case. It's like Lone Star. It's one of those cases where there's so much evidence and it's undisputed that you can affirm a summary judgment finding of likelihood of confusion. I'm sorry, Your Honor, you had a damages question. Did you? I did. I've been monopolizing. So we have this issue about profits from related companies being considered and used to establish the profits of the defendant. I know the district court says it's not piercing the corporate veil. I don't know how that's not effectively piercing the corporate veil. I mean, you are it seems like both your expert and the court say, look, I'm just looking at this kind in a big, they're all related, you know, sort of way. And they are related. I don't doubt that. But related companies establish separate entities all the time. And courts just don't disregard that unless piercing the corporate veil factors are established, which isn't done. I read the Fifth Circuit's Rice, I think, Rice case. And so I see that actually kind of different. But, you know, that arguably provides some support. Is there anything else besides that? Help me with that. Because it seems odd to me that you can award damages that necessarily would be not parties in the case. So, Your Honor, two answers. And the first is where you left off. The distinction is the judgment wasn't ordered against those other entities. They're not required by this order to pay. They haven't been found liable. The $43 million was the district court relying on our entities as a benchmark, a measuring stick, if you will, for the exercise of his discretion under 1117A. And said this is what you is just, right, beyond the profits of Dewberry Group. This is what is just under the circumstances. And to your point, Your Honor, we may have a collection problem, right? And that's not before this court. And that's a totally separate issue. There may have to have been veil-piercing to actually get the profits from those specific entities. But that's not what was awarded here. The $43 million disgorgement of profits judgment was awarded against Dewberry Group. And so we have to go out and get that now if this court affirms it, right? I mean, that's the question. But there is no veil-piercing that's required because no liability was ordered against them. And the second answer, and the court will indulge me, is you ask for other cases. If you look at the Cars for Kids case from Third Circuit, 8 F-4th 209. You look at Max Rock, 40 F-4th 454. And I point to these other circuits because this court doesn't have a lot of cases on 1117A. Those courts talk about that discretion. And they say, one, not just a reasonable reason for exercising discretion, but really the very purpose of that discretion is to get after, and here's the quote from Cars for Kids, true profits. And from Max Rock, that discretion is available for a concern that the award does not encompass the defendant's full profits. Did they use profits from related entities? Cars for Kids actually went the other way. It said, if it had been true profits, that would have been a good rationale for exercising this discretion. In that case, the district court did something that the court found to be punitive. And my point is simply, those cases explain the purpose of this discretion, where the judge looks at the profits that have been shown for the defendants and says, that's not just in this circumstance. I'm going to increase that number. And one reasonable basis and non-abusive discretion basis is to say, what do I think the true profits are? He had an evidentiary basis for doing that here and said, that's what I'm going to award. I'm not going to order it from these entities. That's why no bail piecing is required, but I am going to award the judgment against the defendant. Thank you, Chief Judge. Thank you. Thank you, Your Honors. First, I would like to discuss the disgorgement of profits and the causal connection. So, in our brief on pages 39 through 40 of our opening brief, we cite a U.S. Supreme Court case that says the plaintiff, of course, is not entitled to profits demonstrably not attributable to the unlawful use of this mark. That's Mishawaka rubber, 316 U.S. 203 at page 206. And there are additional cases that similarly hold this. So, it is our position that the law is clear on this, that there has to be a causal connection to the purported profits. And focusing on the first prong, which is, is disgorgement even appropriate in this case? If the district court properly went through the disgorgement synergistic factors, it should have found that disgorgement was not appropriate. When you're looking at the intent to confuse or deceive, you have to look at, was my client trying to capitalize on Dewberry Engineers? And there's no evidence to support that. My client has been in existence for over 30 years. It's his namesake that matters to him. Doesn't care about Dewberry Engineers. He proffers everything by his name. It's his companies. It's John Dewberry, not plaintiff, which was Sid Dewberry, even though they are distinct cousins. Dewberry's customers, it was an important factor to know that they were all John Dewberry's related entities. It's not like they were going out into the marketplace advertising. They were a corporate shared services. The other thing, as your honor previously mentioned, is there's no evidence of diverted sales. There is an adequate remedy, even though we don't think that they from my client, an injunction would have been sufficient. But that's not what happened here. In the damages trial, I mean, we look at the summary judgment liability, obviously, under the genuine issue material fact. But aren't we in a different world in awarding damages? I mean, you got various factors that can be in and we might disagree with them. But are we in abuse of discretion world in the damages award? So under synergistics, an award of damages is reviewed abuse of discretion. The amount awarded is reviewed for clear error. And the method for determining the award is de novo. Right. Clear as mud. Well, I think that makes sense. I mean, that the method here is application of synergistic factors, right? Yes, your honor. It's not OK. I hear you. I'm sorry. Doesn't the Supreme Court case that you cited put the burden on your client? As as opposing counsel argued, the burden of proving costs is on my client. And even if the burden was for the causal connection, even if the burden was on us, we demonstrated significantly that there was no causal connection between the revenues of non parties that aren't being accused of using the marks and those profits and the alleged infringement. What's the evidence? Just tell me the actual evidence, not that you did it. What's the evidence? So the evidence is in the trial record. Our expert, Lisa Miller, went through and described in detail that all of the leases that were the basis of the disgorgement award were executed or discussed prior to the alleged first use of the alleged infringing marks. So what we're talking about here, the revenues generated are from leasing office space in non-party buildings. And that revenue went to the non-parties. And the district court disgorged that revenue and awarded it to the plaintiff. So here you have long-term leases in class A office buildings that the contracts existed prior to the first alleged infringement date or that the communication started. There's also substantial evidence. She had a whole chart where she said exactly why these damages should or why these revenues are not attributable to the alleged infringement. And additional evidence that she supported was the fact that a lot of times when the tenants came, they came through a third-party broker and they were negotiated through a third-party broker. Dewberry Group had nothing to do with it. Was that expert's opinion admitted into trial? Yes, Your Honor. The other thing that our expert talked about at length was the revenues associated with transient parking. So my client had parking lots that people would come in and park when they wanted to be in midtown in Atlanta, Georgia. And the district court found that the expert testimony that was not rebutted that said, you know, people pick The district court said that just wasn't believable and found that parking, revenues generated from parking in a lot, were somehow attributable to the infringing marks. And again, their expert just assumed that all of these profits, there was a causal connection. There was no evidence that he reviewed. He went off a chart that was provided by plaintiff's counsel in determining that profits earned by 13 non-parties somehow should be impugned to Dewberry Group because Dewberry Group provides some property management services to companies owned by John Dewberry. I also wanted to briefly touch on the other errors on the disgorgement award. In addition to the synergistic factors and no causal link, as previously discussed, you know, here we have a complete windfall based on non-parties' profits. And yes, there is the American Rice case, but in that case, we're dealing with a product. And a product, you can make that causal connection because the product has a product name and that's the alleged infringement. Here, we're dealing with services provided to parties that are related to my client. So that's in, you know, the American Rice case and the other cases that the district court relied on, you know, are very distinguishable. The other thing that the courts look at when assessing profits is they look at arm's length transactions. And so, if you're going to pull from a non-party and find the, you know, accused infringer and disgorge those profits from the non-party, there's got to be some alter ego, bail piercing, improper allocation. And here, there is no allegation of alter ego, bail piercing, or anything of that nature. And a case that I think is much more on point is Global Field versus Element Spirits. It is a California case that was affirmed in the Ninth Circuit, 2017 Westlaw 6520589. Their plaintiff tried to argue that a non-party was an affiliate of the alleged infringer, and therefore, all of the sales of the court said no, which was affirmed. The finding of infringement was only against the defendant, not the non-party. And the district court correctly said that it lacked jurisdiction to order disgorgement from a party, from a non-party. I see that I'm way out of time. I apologize. All right. Thank you, counsel.
judges: Roger L. Gregory, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.